**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **HORATIO OMAR ROBERSON,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:14-cv-2384** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **CITY OF YORK and** | : | |
| **MICHAEL LEE EBERSOLE,** | : | |
| **Defendants** | : | |

**MEMORANDUM**

Before the Court is Defendants City of York and Michael Lee Ebersole's motion to dismiss Plaintiff's second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 23.) For the reasons that follow, the Court will grant the motion.

**I.     BACKGROUND**

The case arises from an altercation that occurred outside a residence on October 16, 2010. (Doc. Nos. 22 ¶¶ 12-18.) The altercation allegedly began when two neighbors and their friend threatened and shouted racial slurs at Plaintiff Horatio Omar Roberson's girlfriend. (See id. ¶¶ 12-13.) Plaintiff alleges that a large crowd gathered outside his girlfriend's home and damaged her residence. (Id.) Plaintiff purportedly intervened to protect his girlfriend and, as a result, was chased, threatened with a handgun, and hit with a stick. (Id. ¶¶ 15-16, 20.)

On or around October 18, 2010, Plaintiff and his girlfriend filed private criminal complaints against the two neighbors and their friend (id. ¶¶ 18, 24), who similarly filed private criminal complaints of the same charges against Plaintiff and his girlfriend (id. ¶ 25). Officer Michael Lee Ebersole of the York City Police Department purportedly solicited the parties to withdraw the private complaints. (Id. ¶ 28.) Officer Ebersole allegedly misled Plaintiff and

caused him to withdraw his criminal charges against the two neighbors and their friend.  (Id. ¶ 30.)

On November 10, 2010, Officer Ebersole filed a criminal complaint against Plaintiff alleging two counts of simple assault, one count of terroristic threats, and three counts of harassment.[1]  (Id. ¶ 38.)  According to Plaintiff, Officer Ebersole's complaint falsely describes the October 16, 2010 incident as resulting from an argument and escalating into Plaintiff swinging a machete toward one neighbor, striking the other neighbor, and then running after the neighbor's friend with a machete.  (Id. ¶ 39.)  Plaintiff alleges that Officer Ebersole lacked probable cause to arrest Plaintiff, intentionally fabricated probable cause to arrest Plaintiff, disregarded exculpatory evidence, and fabricated police reports.  (Id. ¶¶ 43-44.)  Plaintiff also alleges that Officer Ebersole knew or should have known that the neighbors were motivated by racial bias and that the neighbor's friend had previously provided false statements to police.[2]  (Id. ¶¶ 33-38.)

On December 21, 2010, two counts of harassment were dismissed at a preliminary hearing.  (Id. ¶ 48.)  The remaining counts were nolle prossed on December 13, 2012.  (Id. ¶ 56).  On December 15, 2014, Plaintiff commenced this Section 1983 action against Defendants Officer Ebersole and the City of York.  (Doc. No. 1.)  Plaintiff filed an amended complaint on February 9, 2015 (Doc. No. 12), and a second amended complaint on January 15, 2016 (Doc. No. 22).  In the second amended complaint, Plaintiff brings counts of failure to train and supervise, deliberate indifference, and malicious prosecution pursuant to 42 U.S.C. § 1983.  (Id.)

---

[1] Defendant Ebersole did not bring charges against the two neighbors or the friend.  (Doc. No. 23 ¶ 50.)

[2] Plaintiff avers that Plaintiff's race and his interracial relationship with his girlfriend was the "sole or substantial factor in Defendants' decision to suspect, investigate and to charge Plaintiff with Misdemeanor offenses and to refuse to charge" the two neighbors or their friend. (Doc. No. 23 ¶ 58.)

On January 15, 2016, Defendants filed their third motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. No. 23.)  Defendants filed a brief in support of the pending motion on January 29, 2016 (Doc. No. 24), and Plaintiff filed a brief in opposition on June 9, 2016 (Doc. No. 33).  During this time, this Court granted Sandra Thompson, Esquire's motion for leave to withdraw as counsel for Plaintiff (Doc. Nos. 26, 27) and Plaintiff notified the Court of his intention to proceed pro se (Doc. No. 30).  The pending motion is now ripe for disposition.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Although Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it "fail[s] to state a claim upon which relief can be granted."  See Fed. R. Civ. P. 12(b)(6).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (citing Twombly, 550 U.S. at 556).  A court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff.  See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).

As such, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible, or they risk dismissal.  See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  To determine the sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has identified the following steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement for relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

## III.   DISCUSSION

The second amended complaint brings counts of failure to train, deliberate indifference in policy and customs, and malicious prosecution against Defendants City of York and Officer Ebersole.  The Court first addresses Plaintiff's malicious prosecution claim.

### A.   Malicious Prosecution

In Count II of the second amended complaint, Plaintiff brings a malicious prosecution claim under 42 U.S.C. § 1983 against Defendant Ebersole.  (Doc. No. 22 ¶ 107.)  Defendants move this Court to dismiss Plaintiff's malicious prosecution claim on the basis of qualified immunity and for failure to state a claim.  (Doc. No. 24.)  Specifically, Defendants argue that Officer Ebersole did not initiate the prosecution and had probable cause to arrest based on "witness accounts that [Plaintiff] hit a woman with a machete."  (Doc. Nos. 23 ¶¶ 7-8; 24 at 15-20, 22-23.)  Plaintiff responds that Defendant Ebersole "intentionally fabricated the appearance

of probable cause to arrest Plaintiff" by disregarding exculpatory evidence and "fabricating police reports." (Doc. No. 33 at 2; <u>see</u> Doc. No. 22 ¶ 43.)

The common law tort of malicious prosecution is "actionable under 42 U.S.C. § 1983, because it undermines an individual's right to be free from unreasonable seizures under the Fourth Amendment." <u>Davis v. Malitzki</u>, 451 F. App'x 228, 232 (3d Cir. 2011). To prove malicious prosecution under § 1983, a "plaintiff must show that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." <u>Kossler v. Crisanti</u>, 564 F.3d 181, 186 (3d Cir. 2009) (internal quotations and citations omitted).

This Court turns to whether the second amended complaint sufficiently alleges that Defendant Ebersole acted without probable cause in arresting Plaintiff for the offenses charged. "Initiation of the proceeding without probable cause is an essential element of a malicious prosecution claim." <u>Estate of Smith v. Marasco</u>, 318 F.3d 497, 522 (3d Cir. 2003). Probable cause to arrest exists "if there is a 'fair probability' that the person committed the crime at issue." <u>Wilson v. Russo</u>, 212 F.3d 781, 789 (3d Cir. 2000). As a general rule, when "a police officer has received a reliable identification by a victim of his or her attacker, the police have probable cause to arrest." <u>Sharrar v. Felsing</u>, 128 F.3d 810, 818 (3d Cir. 1997); <u>accord</u> <u>Wilson v. Russo</u>, 212 F.3d 781, 790-91 (3d Cir. 2000). However, "[i]ndependent exculpatory evidence or substantial evidence of the witness's own unreliability that is known by the arresting officers could outweigh the identification such that probable cause would not exist." <u>Wilson</u>, 212 F.3d at 790.

Accepting Plaintiff's allegations as true and drawing all reasonable inferences in his favor, Plaintiff fails to adequately allege that Defendant Ebersole acted without probable cause. Here, Plaintiff alleges that (1) two neighbors and their friend filed private criminal complaints against Plaintiff and his girlfriend and (2) that one neighbor "falsely reported" at a hospital that she was struck on her left arm with a machete. (Doc. Nos. 22 ¶¶ 17, 25.) According to the affidavit of probable cause, which Plaintiff attaches to his second amended complaint, a neighbor called the police after Plaintiff reportedly screamed at the two neighbors, swung the machete in their direction, injured a neighbor, and chased the neighbors' friend toward a park with the machete in hand. (Doc. No. 22-1 at 4.)

Plaintiff's contention that Defendant Ebersole "deliberately disregarded available exculpatory evidence" does not defeat that the existence of probable cause under the circumstances alleged. (Doc. No. 22 ¶ 103; see id. ¶¶ 99-100); Malitzki, 451 F. App'x at 234. "Once a police officer has a reasonable basis for believing there is probable cause," the officer is not required to put "contradictory evidence into the affidavit" or to "eliminate every theoretically plausible claim of innocence before making an arrest." Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997); Gramenos v. Jewel Companies, Inc., 797 F.2d 432, 440 (7th Cir. 1986); see also Miloslavsky v. AES Eng'g Soc., Inc., 808 F. Supp. 351, 355 (S.D.N.Y. 1992) aff'd, 993 F.2d 1534 (2d Cir. 1993) ("The veracity of citizen complaints who are the victims of the very crime they report to the police is assumed."). Accordingly, this Court will dismiss Plaintiff's malicious prosecution claim for failure to adequately allege that Defendant Ebersole acted without probable cause.

B.      **Failure to Train Claim**

In Count I(A) of the second amended complaint, Plaintiff also alleges that Defendant City

of York is liable under 42 U.S.C. § 1983 for causing and contributing to the malicious and

wrongful prosecution of Plaintiff and for failing to properly train its police officers.  (Doc. No.

22 ¶¶ 65, 80.)  Plaintiff maintains that the City of York knew or should have known that its

police officers lack training on the "particular racial tensions between City of York residents."

(Id. ¶¶ 73-74.)  Defendants respond that Plaintiff's allegations are "pure guesswork" and that

there is no "evidence of any prior constitutional violations (much less a pattern) involving similar

situations to alert York to this 'obvious' need for better training."  (Doc. No. 24 at 29, 31.)

Under "limited circumstances," an "allegation of a 'failure to train' can be the basis for

[municipal] liability under § 1983."  City of Canton v. Harris, 489 U.S. 378, 387 (1989).  First, a

plaintiff must establish that the supervising defendant's "failure to train amounts to deliberate

indifference to the rights of persons with whom the police come into contact."  Id. at 388.  The

standard of deliberate indifference requires proof that the municipal actor "disregarded a known

or obvious consequence of his action."  Bryan Cnty. v. Brown, 520 U.S. 397, 410 (1997).  "A

pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to

demonstrate deliberate indifference for purposes of failure to train."  Connick v. Thompson, 131

S. Ct. 1350, 1360 (2011) (citing Bryan Cnty., 520 U.S. at 409).[3]

Second, separate from deliberate indifference, the "identified deficiency in [the] training

program" must also have "a causal nexus with [the plaintiff's] injury."  Thomas v. Cumberland

Cnty., 749 F.3d 217, 226 (3d Cir. 2014) (internal citations omitted).  "Liability cannot rest only

---

[3] A "continued adherence to an approach that [defendants] know or should know has failed to prevent tortious conduct by employees" may also constitute deliberate indifference. Connick, 131 S. Ct. at 1359 (quoting Bryan Cnty., 520 U.S. at 409).

on a showing that the employees 'could have been better trained or that additional training was available that would have reduced the overall risk of constitutional injury.'" Thomas v. Cumberland Cty., 749 F.3d 217, 226 (3d Cir. 2014) (quoting Colburn v. Upper Darby Twp., 946 F.2d 1017, 1030 (3d Cir. 1991)).

Here, Plaintiff alleges that Defendant City of York failed to train police officers on: (1) "the particular racial tensions between City of York residents" (Doc. No. 22 ¶ 73); and (2) the impact of "racially motivated bias and retaliation" on identifications and witness statements (id. ¶¶ 74, 77-78).  Plaintiff alleges that, if Defendant City of York had properly trained its police officers, Defendant Ebersole would not have arrested Plaintiff based on the statements of his neighbors or the neighbors' friend.  (Id. ¶¶ 84-86.)   The second amended complaint, however, does not allege a "pattern of similar constitutional violations."  Connick, 131 S. Ct. at 1360.

Plaintiff does not allege a pattern of false arrests or selective prosecutions.  (See Doc. No. 22 ¶¶ 75, 82-83.)  Plaintiff instead claims that York City police officers have a pattern of conducting investigations "motivated by racial bias" and by using unreliable identifications, "false or unreliable complaints," or "statements of witnesses with known or reasonably discernable racial bias."  (Id. ¶¶ 70, 75.)  More precisely, Plaintiff alleges that Defendant City of York knew or should have known that: (1) racial animosity motivates "false, unreliable and retaliatory" reports (id. ¶ 68); (2) police officers have a pattern of conducting investigations using unreliable identifications, "false or unreliable complaints," or "statements of witnesses with known or reasonably discernable racial bias" (id. ¶¶ 70, 75); and (3) unreliable and false identifications, complaints, and statements lead to false arrests and selective prosecutions (see id. ¶¶ 71, 77-79).

At most, Plaintiff points to "courts hav[ing] dismissed prior criminal complaints," the suppression of evidence, and prior complaints in support of an inference that a pattern of false arrests or selective prosecutions exists.  (Id. ¶ 80.)  Plaintiff alleges that Defendant received:

> [P]rior complaints filed internally and filed in state and federal courts from African American citizens and/or interracial couples that they have been targeted and/or falsely accused by police based on unreliable information because of their race and/or racial associations.

(Id. ¶ 80.)  However, these allegations do not permit this Court to draw the inference that such complaints or dismissals were "sufficiently similar" to put Defendant City of York on notice that specific training was necessary to prevent false arrests or selective prosecution.  (See Doc. No. 22 ¶¶ 73-74, 77-78, 80); see Jacobs v. Palmer, No. 14-5797, 2015 WL 1033294, at *6 n.4 (E.D. Pa. Mar. 10, 2015) (citing Connick, 131 S. Ct. at 1360).[4]  Absent an allegation that a pattern of false arrests or selective prosecution exists or a reasonable inference that Defendant City of York was on notice that specific training was necessary, this Court will dismiss Plaintiff's failure to train claim for failure to state a claim upon which relief can be granted.

## C.   Maintaining Policy or Custom

In Count I(B) of the second amended complaint, Plaintiff asserts a municipal liability claim against Defendant City of York for "deliberate indifference in policy and customs."  (See Doc. No. 22 ¶¶ 88-95.)  Plaintiff contends that Defendant City of York maintained a well-settled practice of: (1) discouraging complaints against police officers; (2) failing to investigate complaints against police officers; (3) and refusing to train police officers "for initiating and sustaining criminal investigations and prosecutions without reliable and credible information to substantiate probable cause and based on race and racial associations."  (Id. ¶¶ 89-93.)

---

[4] Plaintiff does not raise a "single-incident liability" argument discussed in the Supreme Court's Connick v. Thompson decision.  See Connick, 131 S. Ct. 1350, 1361 (2011).

Defendants contend that Plaintiff "fails to show any official policy" and simply alleges a case of "got the wrong guy."  (Doc. No. 24 at 30.)

"A municipality will be liable for the constitutional violations of a state actor if it acts 'with deliberate indifference to the consequences [and] established and maintained a policy, practice or custom which directly caused constitutional harm.'"  Gottlieb ex rel. Calabria v. Laurel Highlands Sch. Dist., 272 F.3d 168, 175-76 (3d Cir. 2001) (quoting Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir. 1989)).  A "policy" exists when a "decisionmaker possess[ing] final authority to establish a municipal policy with respect to the action issues an official proclamation, policy, or edict."  Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990) (alterations in original) (internal citations omitted). Alternatively, a "custom" arises when, "though not authorized by law, 'such practices of state officials [are] so permanent and well settled' as to virtually constitute law."  Id. (quoting Monell v. Dep't of Soc. Servs. of N.Y.C., 436 U.S. 658, 691 (1978)).

As discussed in this Court's prior memorandum, Plaintiff has not alleged sufficient facts to support a finding that Defendant City of York maintained a policy or custom that directly caused the constitutional harm at issue.  (Doc. No. 20.)  Gottlieb, 272 F.3d at 176; see Hall v. Weaver, No. 10-101, 2011 WL 1136838, at *2 (W.D. Pa. Mar. 8, 2011).  Besides the October 16, 2010 altercation, Plaintiff does not allege another example of Defendant City of York's purported policy or custom.  Hall, 2011 WL 1136838, at *2.  The Court will dismiss Count I(B) pursuant to Federal Rule of Civil Procedure 12(b)(6).

### D.   Due Process and Equal Protection Claims

In addition to the aforementioned Counts I(A), I(B), and II, Plaintiff also appears to seek to vindicate his rights to due process and equal protection in this Section 1983 suit.  (See Doc.

No. 22 ¶¶ 1-2, 61, 71, 86-87.)  However, as this Court noted in its previous memorandum, Plaintiff fails to allege the elements of a due process or an equal protection claim, let alone set forth a sufficient factual matter to show that any of the two respective claims is facially plausible.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  Therefore, Plaintiff's due process and equal protection claims will be dismissed for failure to state a claim upon which relief can be granted.

IV.     **CONCLUSION**

For the reasons stated above, Defendants' motion to dismiss the second amended complaint will be granted.  An order consistent with this memorandum follows.